IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| DONALD TRANTHAM, JR., | ) | |
| | ) | 4:10CV00058 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| HENRY COUNTY SHERIFF'S | ) | |
| OFFICE, ET AL., | ) | By: Jackson L. Kiser |
| | ) | Senior United States District Judge |
| Defendants | ) | |

On November 17th, 2010, the Plaintiff, Donald Trantham, Jr. filed a Complaint against the Henry County Sheriff's Office, the Henry County Commonwealth's Attorney, Gardner, Barrow, Sharpe & Reynolds, P.C., the Martinsville City Police, the Virginia State Police, Martinsville/Henry County Memorial Hospital, and the United States Drug Enforcement Administration. Compl., Nov. 17, 2010, ECF No. 1. All of the named Defendants filed motions to dismiss and briefs in support. Gardner, Barrow, Sharpe & Reynolds Mot. to Dismiss, Dec. 8, 2010, ECF No. 4; Gardner, Barrow, Sharpe & Reynolds Br. in Supp., Dec. 8, 2010, ECF No. 6; Martinsville Police Mot. to Dismiss, Dec. 15, 2010, ECF No. 8; Martinsville Police Br. in Supp., Dec. 15, 2010, ECF No. 9; Commonwealth's Attorney Mot. to Dismiss, Dec. 23, 2010, ECF No. 12; Sheriff's Office Mot. to Dismiss, Dec. 23, 2010, ECF No. 13; Br. in Supp. for Commonwealth's Attorney and Sheriff's Office, Dec. 23, 2010, ECF No. 14; Hospital Mot. to Dismiss, Dec. 23, 2010, ECF No. 15; Hospital Br. in Supp., Dec. 23, 2010, ECF No. 16; State Police Mot. to Dismiss, Dec. 29, 2010, ECF No.27; State Police Br. in Supp., Dec. 29, 2010, ECF No. 28; DEA Mot. to Dismiss, Feb. 3, 2011, ECF No. 33; DEA Br. in Supp., Feb. 3, 2011, ECF No. 34. The Plaintiff was sent three Roseboro notices, the last of which the Clerk's Office mailed on February 3rd, 2011, setting the response deadline for February 24th, 2011. Third

1

Roseboro Notice, Feb. 3, 2011, ECF No. 35.  To date, the Plaintiff has not responded to any of the motions to dismiss.  For the reasons discussed herein, the Plaintiff's claims against all the named Defendants are **DISMISSED WITH PREJUDICE** and Defendant Gardner, Barrow, Sharpe & Reynolds, P.C.'s Motion for a Hearing is **DENIED**.

## **FACTS**

The Plaintiff's Complaint begins with the death of his son due to a drug overdose on October 7th, 2009.  Compl. 2.  The overdose occurred when the Plaintiff's son placed a Fentanyl[1] patch over his heart.  Id.  After his son's death, the Plaintiff sought help from government agencies, all of whom are named Defendants, and the Defendant law firm to determine the source of the Fentanyl patch that caused the overdose.  Id.  The investigation first fell into the hands of the Henry County Sheriff's Office.  Id.  Unsatisfied with "the thoroughness of the investigation," the Plaintiff contacted "officials" several times, one of whom finally advised the Plaintiff to hire an attorney "to get information regarding results of the investigation."  Id.

The Plaintiff hired B. Patrick Sharpe of the defendant law firm.  Id.  The Plaintiff brought Mr. Sharpe the envelope in which the Fentayl patch had been stored and "asked him to help…track the lot number back to the responsible party."  Id.  In less than a month, the Plaintiff became dissatisfied with Mr. Sharpe's services and again tried to take matters into his own hands.  Id.

---

[1] Fentanyl is a schedule II, ultra-powerful opioid (synthetic opiate).  Having thirty to fifty times the potency of heroin, it is the most puissant opioid available for use on humans and animals.  The drug is arguably more dangerous than heroin because consuming the quantity an opioid-addicted user needs to get the desired effect will result in respiratory depression.  Because Fentanyl is so concentrated, just a small dosing miscalculation can cause such acute respiratory depression that the user stops breathing altogether.  Although the drug is made by pharmaceutical companies, it is also clandestinely manufactured.  The Drug Enforcement Administration has expressed concern at the frequency of overdose deaths resulting from the use of "speedballs," which in this context is a combination of Fentanyl and cocaine HCL.  Control of Immediate Precursor Used in the Illicit Manufacture of Fentanyl as a Schedule II Controlled Substance, 75 Fed. Reg. 124, 37296 (June 29, 2010) (to be codified at 21 C.F.R. pt. 1308).

The Plaintiff went to the Henry County Sheriff's Office to inquire about whether "an arrest had been made in regard to the report."[2] Id. When the Sheriff's Office advised the Plaintiff that no arrest had been made, the Plaintiff called the Virginia State Police. Id. It appears the purpose of the call was to complain about the Sheriff's Office and Mr. Sharpe. Id. at 2-3. The Plaintiff then called both the Sheriff's Office and the Henry County Commonwealth's Attorney's Office "to request [that] the investigation be turned over to the Virginia State Police." Id. at 3. When both the Commonwealth's Attorney's Office and the Sheriff's Office declined to pass the case to the State Police, the Plaintiff went back to the Sheriff's Office and asked that the case be handed over to the Federal Bureau of Investigation. Id. The Sheriff's Office again declined to contact another agency. Id.

Undeterred, the Plaintiff then contacted the Drug Enforcement Administration's Roanoke Resident Office. Id. The DEA set up a meeting with the Plaintiff at the Henry County Sheriff's Office where, "[t]heir questioning of me had the tone that I was in trouble." Id. In sum, "[t]his meeting did not seem good." Id. The Plaintiff then made another call to DEA Roanoke to complain about the agent with whom he met. Id. After calling Roanoke, the Plaintiff called the DEA's Richmond District Office and spoke with the Assistant Special Agent in Charge ("ASAC").[3] Id. Evidently dissatisfied with that exchange, the Plaintiff demanded to know the name of the ASAC's supervisor. Id. The ASAC declined to provide the information. Id.

At some point thereafter, the Henry County Commonwealth's Attorney set up a meeting between the Plaintiff and the State Police. Id. at 4. The trooper with whom the Plaintiff met advised the Plaintiff that it was not possible to track the Fentanyl patch using the bar code on the

---

[2] Although it is not entirely clear what "report" the Plaintiff is referring to, context clues suggest that he means a report from the state Heath Department, which the Plaintiff appears to be convinced will lead to the "responsible party." See Compl. 2.
[3] The Richmond District Office is one tier "above" the Roanoke Resident Office. The power structure of DEA Offices goes from Headquarters, to the Division Offices, to the District Offices, to the Resident Offices, and finally to the Posts of Duty.

3

envelope that had contained the patch. Id. Unconvinced, the Plaintiff called the Food and Drug Administration and told the person with whom he spoke to contact the State Police. Id. The trooper with whom the Plaintiff had earlier met then called the Plaintiff and told him to call the DEA. Id. The DEA advised that the Fentanyl patch had been tracked to the Martinsville-Henry County Memorial Hospital. Id.

Armed with this information, the Plaintiff set up a meeting with the administrators of the hospital. Id. The same trooper from the aforementioned meeting was present at the hospital when the Plaintiff arrived. Id. The meeting ended with the Plaintiff being escorted out of the hospital by security guards, supposedly because he brought a copy of the patch envelope to the meeting instead of the original. Id.

After the meeting, the Plaintiff returned to the Commonwealth's Attorney's Office, where he was told that the Commonwealth's Attorney was out of town. Id. The Plaintiff then went back to the Sheriff's Office, where three deputies met him in the lobby to advise him that the case was closed. Id. A few days later, the Plaintiff was served with two restraining orders, one for the Commonwealth's Attorney and one for the Sheriff. Id.

The Plaintiff attempted to retain another attorney, who indicated that he was unable to help. Id. at 5. The Plaintiff also sought out the Martinsville City Police Department, which "denied [him] any assistance." Id. On November 17th, 2010, the Plaintiff filed this lawsuit.

## APPLICABLE LAW

A Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a claim. Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009). When considering a Rule 12(b)(6) motion, the Court must take all of the Plaintiff's assertions of fact as true, but need not give weight to the Plaintiff's conclusions of law. Id. (must accept Plaintiff's assertions of fact as true); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (Court need not accept legal

4

conclusions). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). The facts alleged are sufficiently plausible when they "[allow] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although a plaintiff need not convince the Court that a defendant is probably liable, the plaintiff must do more than simply raise a possibility that the defendant is legally responsible. Id.

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) challenges the Court's power to hear a case on the grounds that the Court lacks the necessary subject matter jurisdiction. Although subject matter jurisdiction and sovereign immunity do not coincide perfectly, there is a recent trend among the district courts within the Fourth Circuit to consider sovereign immunity under Rule 12(b)(1). See Edelman v. Jordan, 415 U.S. 651, 678 (1974) (noting that "the Eleventh Amendment defense sufficiently partakes of the nature of a jurisdictional bar…"); Andrews v. Daw, 201 F.3d 521, 525 (4th Cir. 2000) (unclear whether dismissal on Eleventh Amendment grounds would fall under Rule 12(b)(1) or Rule 12(b)(6)); Pettiford v. City of Greensboro, 556 F.Supp.2d 512, 531 (M.D.N.C. 2008) (considering a motion to dismiss on sovereign immunity grounds under Rule 12(b)(1)); Beckham v. National R.R. Passenger Corp., 569 F.Supp.2d 542, 547 (D.Md. 2008) (Rule 12(b)(1) most appropriate for considering sovereign immunity issues). Rule 12(b)(1) motions are either facial or substantive. Kerns v. U.S., 585 F.3d 187, 192 (4th Cir. 2009). Facial challenges to subject matter jurisdiction contest the sufficiency of the language the Plaintiff has used to allege federal jurisdiction. Id. Substantive challenges, on the other hand, contest the factual merits underlying the Plaintiff's allegation of federal jurisdiction. Id.

The Defendants in this case are presenting substantive challenges. Substantive challenges differ from Rule 12(b)(1) facial challenges and Rule 12(b)(6) challenges in that they

do not require the Court to accept the Plaintiff's factual allegations as true. Id. Furthermore, substantive challenges allow the Court to engage in factfinding, provided that the Court's factfinding does not venture into the merits of the underlying case. To further the Court's factfinding, it may consider extrinsic evidence. Id.

## ANALYSIS

Although the Plaintiff does not clearly state what relief he is seeking, because his "complaint was filed pro se…we are…obligated to construe it liberally to assert any and all legal claims that its factual allegations can fairly be thought to support." Martin v. Gentile, 849 F.2d 863, 868 (4th Cir. 1988) (internal citing references omitted). With the Fourth Circuit's guidance in mind, it appears the Plaintiff is asking the Court to order "a full investigation." Compl. 5. The Plaintiff may also be seeking to hold the named Defendants liable for not investigating his son's death to his satisfaction.

### I. The Court Lacks Subject Matter Jurisdiction Over Any Claim for Money Damages Against DEA

Insofar as the Plaintiff seeks money damages from the DEA, the Federal Tort Claims Act poses two problems for him. The first issue is that the United States, not its agency, is the proper defendant in such a suit. Scheimer v. National Capital Region, Nat. Park Service, 737 F.Supp. 3, 4 (D.D.C. 1990) (internal citing references omitted). The second and more significant problem is that the Plaintiff has failed to exhaust his administrative remedies, thereby depriving this Court of subject matter jurisdiction over his claim. McNeil v. U.S., 508 U.S. 106, 113 (1993) ("[t]he FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies); Perkins v. U.S., 55 F.3d 910, 917 (4th Cir. 1995) (court has no jurisdiction over a Tort Claims Act case until the claimant exhausts his administrative remedies). When considering a substantive challenge to subject matter jurisdiction, the Court is permitted to

consider extrinsic materials and engage in factfinding on the issue, so long as that factfinding does not touch the merits of the case. Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006); Sierra Club v. Kempthorne, 589 F.Supp.2d 720, 725 (W.D.Va. 2008). Along with its brief, the DEA submitted an affidavit from the attorney at DEA's Office of Counsel responsible for handling claims presented to the agency under the Tort Claims Act. Aff. of Karen K. Richardson, Feb. 3, 2011, ECF No. 34-1. In that affidavit, the attorney states that a thorough search of her office's records reveal no claim filed by the Plaintiff arising from the underlying facts in this lawsuit. Id. At no time has the Plaintiff asserted that he did in fact file a claim with the DEA under the Tort Claims Act. His failure to do so means this Court lacks subject matter jurisdiction over any claim for money damages he may be asserting. Plyler v. U.S., 900 F.2d 41, 42 (4th Cir. 1990).

II. There Is No Jurisdictional Bar to the Plaintiff's Claim for Injunctive Relief Against the DEA

The Complaint strongly suggests that money damages are not the sole form of relief the Plaintiff seeks. Compl. 5 ("I believe a full investigation is warranted in this matter"). The Tort Claims Act is not applicable to the extent that the Plaintiff is petitioning this Court for an order compelling the DEA to investigate his son's death. Ajaj v. U.S., 479 F.Supp.2d 501, 550 (D.S.C. 2007) (injunctive relief not available under the Tort Claims Act). The United States has consented to lawsuits for injunctive relief, however, under the Administrative Procedures Act. Wagner v. U.S., 486 F.Supp.2d 549, 554 (D.S.C. 2007). See also Willis v. U.S., 600 F.Supp. 1407, 1415 (N.D.Ill. 1985) (finding no bar to the court considering claims against the DEA for equitable relief under the Administrative Procedures Act arising from alleged violations of constitutional rights). In this case, the Plaintiff appears to be under the impression that he has the right to an investigation of his son's death.

III. As to the Virginia Defendants, the Court May Only Entertain a Claim for Injunctive Relief Against the Commonwealth's Attorney

The claim against the State Police is, in effect, a claim against the Commonwealth. See Florida Dept. of State v. Treasure Salvors, Inc., 458 U.S. 670, 684 (1982) (suits may not brought against a state, its agencies, or its departments). The Eleventh Amendment bars suits against states in federal court, whether in law or in equity. Cory v. White, 457 U.S. 85, 90-91 (1982). The only way to circumvent the Eleventh Amendment's prohibition is if the Commonwealth waived its sovereign immunity to suits in federal court. Will v. Michigan Dept. of State Police, 491 U.S. 58, 66 (1989). It has not. McConnell v. Adams, 829 F.2d 1319, 1329 (4th Cir. 1987). At common law, the Commonwealth was absolutely immune from suit. The Rector and Visitors of the University of Virginia v. Carter, 591 S.E.2d 76, 78 (Va. 2004). In Virginia, statutes in derogation of the common law are construed narrowly. Id. By its terms, the Virginia Tort Claims Act waives the Commonwealth's sovereign immunity from lawsuits in state court. Va. Code Ann. § 8.01-195.3. In waiving immunity from suits in state court, however, the Commonwealth did not impliedly waive its sovereign immunity from suits in federal court. College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board, 527 U.S. 666, 675-76 (1999); McConnell, 829 F.2d at 1329. The Plaintiff's claim against the State Police is, therefore, completely barred by the Eleventh Amendment.

Although the Commonwealth's Attorney's *Office* is an arm of the Commonwealth and therefore immune from suit under the Eleventh Amendment, the Plaintiff in this case has named "Commonwealth *Attorney* (County of Henry)" as the Defendant. Compl. 1 (emphasis added); Savage v. County of Stafford, No. 1:09-cv-1328, 2010 WL 1873222, at *4 (E.D.Va. May 4, 2010) (Commonwealth's Attorney is an officer of the Commonwealth and enjoys immunity in a suit for money damages); Plaster v. Brown, 6:05-cv-6, 2006 WL 240866, at *1 (W.D.Va. Feb. 1,

2006) (same). While the Commonwealth's Attorney is immune in a federal suit for money damages, the Supreme Court has made it clear that state officials may be sued in federal court in their official capacities for prospective, injunctive relief. Seminole Tribe v. Florida, 517 U.S. 44, 71 fn.14 (1996); Will, 491 U.S. at 71 fn.10. The Court may therefore entertain the Plaintiff's claim against the Commonwealth's Attorney only insofar as it is a claim for prospective, injunctive relief.

The Plaintiff has also named the Henry County Sheriff's Office and the Martinsville City Police as Defendants. Compl.1. Fed. R. Civ. P. 17(b)(3) provides that where a defendant is neither an individual nor a corporation, the capacity to be sued is determined by state law. See also Streit v. County of Los Angeles, 236 F.3d 552, 565 (9th Cir. 2001) (in a suit against the county sheriff's department, Fed. R. Civ. P. 17(b) deferred to state law to determine the agency's capacity to be sued). Local police and sheriff's departments in Virginia are "non suis juris," meaning they simply do not have the capacity to be sued. Rutledge v. Town of Chatham, 4:10-cv-35, 2010 WL 3835662, at *1 (W.D.Va. Sept. 30, 2010) (under Virginia law, Chatham and Danville Police Departments did not have the capacity to be sued); Burnley v. Norwood, No. 3:10-cv-264, 2010 WL 3063779, at *5 (E.D.Va. Aug. 4, 2010) (under Virginia law, Richmond City Police Department did not have the capacity to be sued); Muniz v. Fairfax County Police Dep't, No. 1:05-cv-446, 2005 WL 1838326, at *2 (E.D.Va. Aug. 2, 2005) (the Fairfax County Police Department is an operating division of the county and is therefore not amenable to suit because, as an instance of Dillon's Rule, the department cannot be sued unless the General Assembly has vested it with such capacity, which the General Assembly has not). As such, the Plaintiff's claims against the Henry County Sheriff's Office and the Martinsville Police Department cannot go forward on any ground.

IV. The Plaintiff Has No Right to Have His Son's Case Investigated

Although the Court may have jurisdiction over the Plaintiff's claims against the DEA and the Commonwealth's Attorney for injunctive relief, his Complaint utterly fails to state a claim.[4] The Supreme Court has been clear that the government is not required "to protect the life, liberty, and property of its citizens against invasion by private actors." DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189, 195-96 (1989). Accord Doe ex. rel. Johnson v. South Carolina Dept. of Social Services, 597 F.3d 163, 170 (4th Cir. 2010) (the Due Process Clause "confers no affirmative right to governmental aid") (internal citing references and quotation marks omitted). A corollary of the Supreme Court's holding in DeShaney is that failure by police and prosecutors to investigate a crime is not actionable unless the government "selectively den[ies] its protective services to certain disfavored minorities." Roman v. City of Reading, 257 F.Supp.2d 799, 802 (E.D.Pa. 2003) (citing DeShaney, 489 U.S. at 197). No such Equal Protection Clause claim is apparent from even the most generous reading of the Complaint. See Beltran v. City of El Paso, 367 F.3d 299, 304 (5th Cir. 2004) (in order to make a proper Equal Protection claim in the context of domestic violence, the Plaintiff must not only allege that a policy existed whereby police provided less protection to domestic assault victims than other assault victims, but also that discrimination against women was the motivation for the policy); Roman, 257 F.Supp.2d at 802 (the gravamen of an Equal Protection claim for failure to investigate is not simply a selective denial, but rather a selective denial on a non-permitted basis such as race). Even if the Court takes all the Plaintiff's factual allegations as true and construes the Complaint liberally in his favor, it will not save him from the fact that he bases his claim for

---

[4] Indeed, even if the Court were to interpret the Plaintiff's claims against the sheriff's office and the police department as claims against the localities or interpret the claim against the State Police as a suit against the individual trooper mentioned in the Complaint, thereby removing the sovereign immunity bar to those claims, the claims would still fail under Fed. R. Civ. P. 12(b)(6) for the reasons explained in this portion of the Opinion.

10

relief upon a right that the Supreme Court has clearly refused to recognize. McLean v. U.S., 566 F.3d 391, 399-401 (4th Cir. 2009).

Even if the Plaintiff's claim were cognizable, fashioning the injunctive relief he seeks would be impossible. An injunction is an equitable remedy, which must be feasible in order to be granted. See Potomac Elec. Power Co. v. Electric Motor and Supply, Inc., 262 F.3d 260, 267-68 (4th Cir. 2001) (recognizing that equitable remedies cannot be granted where they are not feasible); 7A Michie's Jurisprudence § 7 (Bruce Tucker et al. eds., 2006 ed. 2006). Since injunctions are enforced through contempt proceedings, the Court must be able to craft an order precise enough to allow it to determine with certainty whether it its order is being violated. Brown v. Alabama Dept. of Transp., 597 F.3d 1160, 1186 (11th Cir. 2010) ("the injunction itself still must be clear enough so that the enjoined party can comply without fear of contempt"); Restatement (Second) of Torts § 936(1)(g) (1979). The Plaintiff offers no suggestions as to what criteria the Court could use to determine whether the police, hospital, and law firm are investigating satisfactorily and no criteria is readily apparent to the Court. Furthermore, an order like the one sought by the Plaintiff would require very extensive Court supervision—yet another reason why equitable relief is not available to this Plaintiff. Natural Resources Defense Council, Inc. v. U.S. E.P.A., 966 F.2d 1292, 1300 (9th Cir. 1992) ("[i]njunctive relief may be inappropriate where it requires constant supervision"); Lewis v. Lehigh County, 516 F.Supp. 1369, (E.D.Pa. 1981) (declining to issue an injunction because, among other reasons, it would require unwieldy court supervision).

V. The Court Declines to Exercise Its Supplemental Jurisdiction Over the Remaining Claims

The Court's only basis of jurisdiction for Martinsville Henry County Memorial Hospital and Gardner, Barrow, Sharpe & Reynolds, P.C. is supplemental jurisdiction. 28 U.S.C. § 1367. The hospital and the law firm are not federal entities and there is neither a federal question nor

diversity.[5] Both the hospital and the law firm are Virginian entities and on the cover sheet submitted with the Complaint the Plaintiff lists his place of residence as Henry County. Compl. Ex. A., Nov. 17, 2010, ECF No. 1-1 (civil cover sheet); Mot. to Dismiss 1.

"Once a district court has dismissed the federal claims in an action, it maintains wide discretion to dismiss the supplemental state law claims over which it properly has supplemental jurisdiction." Yashenko v. Harrah's NC Casino Co., LLC, 446 F.3d 541, 553 fn.4 (4th Cir. 2006). Indeed, if the Court does not dismiss the Plaintiff's claims against the hospital and the law firm under 28 U.S.C. § 1367(c)(3), it will have to dismiss them under Fed. R. Civ. P. 12(b)(6). To the extent the Plaintiff is claiming legal malpractice, he makes no claim whatsoever that he could have obtained a better result or that the alleged breach of duty caused him any loss. Hendrix v. Daugherty, 457 S.E.2d 71, 74 (Va. 1995) (each element of malpractice "is indispensable if the plaintiff is to establish a *prima facie* case of legal malpractice"). In fact, the Plaintiff avers that the second attorney he contacted could not help him and that he could find no lawyer in the Commonwealth who could be of service. Compl. 5.

Similarly, the Plaintiff fails to allege enough facts to flesh out any claim he might be making that the hospital was negligent. Iqbal, 129 S.Ct. at 1949 ("[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). All the Plaintiff asserts is that the hospital was the point of origin for the Fentanyl patch. Compl. 4. This alone is insufficient to make out a negligence claim. Iqbal, 129 S.Ct. at 1949 ("[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility

---

[5] As to federal question jurisdiction, private actors can only be liable as state actors under 42 U.S.C. § 1983 in three narrow circumstances, none of which are alleged in the case at bar. Those three circumstances are: (1) where the government coerces or significantly encourages the allegedly unconstitutional actions; (2) where the private parties perform a public function that is traditionally the sole province of the government; or (3) where the government puts itself in a position of interdependence with the private entity such that it becomes a joint participant in the undertaking. Rayburn ex rel. Rayburn v. Hogue, 241 F.3d 1341, 1347 (11th Cir. 2001).

and plausibility of entitlement to relief") (internal citing references and quotation marks omitted).

Furthermore, insofar as the Plaintiff alleges that the hospital was negligent in failing to monitor its controlled substances, this claim belongs to his son's estate. Va. Code Ann. § 8.01-50; Kone v. Wilson, 630 S.E.2d 744, 746 (Va. 2006). In Virginia, although an action for wrongful death must be brought in the name of the personal representative, the state Supreme Court has been clear that the personal representative cannot proceed pro se on such a claim. Kone, 630 S.E.2d at 745-46. It is not even clear whether the Plaintiff is the personal representative of his son's estate.

Finally, Defendant Gardner, Barrow, Sharpe & Reynolds, P.C. makes a good point in its Brief in Support of its Motion to Dismiss when it asserts that "the Court is without the reach, power or authority to grant [the Plaintiff] the relief he apparently wants," which would be to "order everyone he named to get busy and further investigate this case." Br. in Supp. of Mot. to Dismiss 3. The Plaintiff offers no source of authority upon which the Court can draw to grant his request and no source is apparent. For the reasons discussed in Section IV of this Opinion, injunctive relief is not appropriate in this case.

VI. The Dismissal Should Be With Prejudice

"While a potentially meritorious claim, particularly by a pro se litigant, should not be unqualifiedly dismissed for failure to state a claim unless its deficiencies are truly incurable, such an unqualified dismissal is entirely proper when the court has reviewed the claim and found it to be substantively meritless." McLean, 566 F.3d at 400-01. There is no way the Plaintiff could amend his Complaint to state a legally cognizable claim against the government Defendants, which serve as the vehicle for getting the Plaintiff's case into federal court. Once the government Defendants are dismissed, the Court is left with two non-diverse Defendants against

13

whom the Plaintiff wishes to assert state law claims. The Fourth Circuit has been clear that District Courts have "wide discretion" to dismiss these sorts of claims that are before the Court solely on the basis of supplemental jurisdiction. Yashenko, 446 F.3d at 553 fn.4. Furthermore, the Court notes that there is no way the Plaintiff could reframe his Complaint on these facts to invoke proper federal jurisdiction over the law firm and the hospital. Since this "court has determined that the complaint is truly unamendable, a dismissal without prejudice [would be] of little benefit to the [Plaintiff]." McLean, 566 F.3d at 401.

VII. A Hearing Is Unnecessary

The Defendant law firm, Gardner, Barrow, Sharpe & Reynolds, P.C., is alone among the Defendants in moving for a hearing. Mot. for a Hearing, Dec. 8, 2010, ECF No. 5. Before the 2007 restyling of the Federal Rules of Civil Procedure, the Fourth Circuit held that "[t]here is no requirement…that a district judge hold a hearing prior to ruling on a motion to dismiss." Pueschel v. U.S., 369 F.3d 345, 354 (4th Cir. 2004). The 2007 restyling moved the Rule 12 hearing provision from its pre-2007 listing under Fed. R. Civ. P. 12(d) to a new and separate listing under Fed. R. Civ. P. 12(i). Although the 2007 restyling changed the wording of the hearing provision, that rewording does not appear to affect the outcome here. Compare Fed. R. Civ. P. 12(i) (post-2007 restyling) ("[i]f a party so moves, any defense listed in Rule 12(b)(1) to (7)…must be heard") with Fed. R. Civ. P. 12(d) (pre-2007 restyling) ("[t]he defenses specifically enumerated (1)-(7) in subdivision (b) of this rule…shall be heard"). Furthermore, the courts that have considered the issue have held that the 2007 changes to the Rules of Civil Procedure were stylistic only and that pre-2007 cases interpreting the rules are still valid. Taylor v. Alabama, 275 Fed.Appx. 836, 839 fn.5 (11th Cir. 2008) (changes were stylistic only); Bingue v. Prunchak, 512 F.3d 1169, 1172 fn.4 (9th Cir. 2008) (same); Holfelich v. Hawaii, No. 07-00489, 2007 WL 4372805, at *1 (D.Haw. Dec. 13, 2007) (applying pre-2007 case law because 2007 changes in

the rules were meant to be stylistic only).  See also Rule 12 Advisory Committee Notes, 2007 Amendments ("[t]hese changes are intended to be stylistic only").

The issues and arguments in the motions to dismiss have been well briefed and a hearing would not aid this Court in its decisional process.  Deciding this matter on the briefs will also keep litigation costs down, which is an important factor for courts to consider.  In light of these considerations, the Court declines to hold a hearing on these motions.

## **CONCLUSION**

For the reasons discussed above, the Plaintiff's claims against all the named Defendants are **DISMISSED WITH PREJUDICE** and Defendant Gardner, Barrow, Sharpe & Reynolds, P.C.'s Motion for a Hearing is **DENIED**.  The Clerk is directed to dismiss this case from the docket.

ENTERED this 10th day of March, 2011.

s/Jackson L. Kiser  
SENIOR UNITED STATES DISTRICT JUDGE